IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

OWNERS INSURANCE COMPANY,

    Plaintiff,

v.

MATA ENTERPRISES, INC.;
MELDIMATA, LLC d/b/a DAYS INN
& BRIDGEVIEW INN AND
SUITES; ANKIT PATEL;
B.B. PATEL; KANTA B. PATEL;
K.J.; and N.J.

    Defendants.

Civil Action File No.

## OWNERS INSURANCE COMPANY'S COMPLAINT FOR DECLARATORY JUDGMENT

Pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, Plaintiff Owners Insurance Company files this Complaint for Declaratory Judgment, showing this Honorable Court as follows:

## PARTIES

1.

Plaintiff Owners Insurance Company ("Owners") is a corporation organized and existing under the laws of Ohio with its principal place of business in Michigan.

1

2.

Defendant Mata Enterprises, Inc. ("Mata Enterprises") is a Georgia Domestic Profit Corporation that was formed on July 17, 1997, and administratively dissolved on December 31, 2015. Mata Enterprises owned and operated the motel located at 6000 Harrison Road, Macon, Georgia 31206 under the trade name Days Inn from at least 1998 through October 21, 2013, including during the entire period when Defendants K.J. and N.J. allegedly were trafficked at the property. The principal office address for Mata Enterprises was 6000 Harrison Road, Macon, Georgia 31206-4742, and it may be served via its registered agent, B.B. Patel, at that address. Mata Enterprises is a citizen of Georgia and is subject to the jurisdiction and venue of this Court.

3.

Defendant Meldimata, LLC d/b/a Days Inn & Bridgeview Inn and Suites ("Meldimata") is a Georgia Domestic Limited Liability Company that was formed on October 15, 2013. Meldimata acquired the motel located at 6000 Harrison Road, Macon, Georgia 31206 from Mata Enterprises on October 21, 2013. Upon information and belief, Defendants Ankit Patel, B.B. Patel, and Kanta B. Patel are the sole members of Meldimata. Each of Meldimata's members reside and are domiciled in Georgia and have the present intention to remain in Georgia. Meldimata is therefore a citizen of Georgia. Meldimata may be served through its registered

agent, Defendant Ankit Patel, at 6000 Harrison Road, Macon, Georgia 31206. Meldimata is subject to the jurisdiction and venue of this Court.

4.

Defendant Ankit Patel is an individual who resides and is domiciled in Georgia and has the present intention to remain in Georgia. Ankit Patel served as Secretary of Mata Enterprises during the relevant period and is the registered agent for Meldimata. Defendant Ankit Patel may be served at 6000 Harrison Road, Macon, Georgia 31206. Defendant Ankit Patel is subject to the jurisdiction and venue of this Court.

5.

Defendant B.B. Patel is an individual who resides and is domiciled in Georgia and has the present intention to remain in Georgia. B.B. Patel served as CEO and registered agent of Mata Enterprises during the relevant period. Defendant B.B. Patel may be served at 6000 Harrison Road, Macon, Georgia 31206. Defendant B.B. Patel is subject to the jurisdiction and venue of this Court.

6.

Defendant Kanta B. Patel is an individual who resides and is domiciled in Georgia and has the present intention to remain in Georgia. Kanta B. Patel served as CFO of Mata Enterprises during the relevant period. Defendant Kanta B. Patel may

be served at 6000 Harrison Road, Macon, Georgia 31206. Defendant Kanta B. Patel is subject to the jurisdiction and venue of this Court.

7.

Defendant K.J. is an individual who resides and is domiciled in Georgia and has the present intention to remain in Georgia. K.J. is one of the plaintiffs in the Underlying Lawsuit and has an interest in any determination regarding Owners' obligations under the applicable insurance policies. K.J. is identified in the Underlying Lawsuit using initials to prevent the public disclosure of her name. K.J. was a minor when the events that are the subject of the Underlying Lawsuit occurred, and K.J. filed a Motion for Protective Order and Leave to Proceed Anonymously in the Underlying Lawsuit based on the nature of the allegations. K.J. is subject to the jurisdiction and venue of this Court.

8.

Defendant N.J. is an individual who resides and is domiciled in Georgia and has the present intention to remain in Georgia. N.J. is one of the plaintiffs in the Underlying Lawsuit and has an interest in any determination regarding Owners' obligations under the applicable insurance policies. N.J. is identified in the Underlying Lawsuit using initials to prevent the public disclosure of her name. N.J. was a minor when the events that are the subject of the Underlying Lawsuit occurred, and N.J. filed a Motion for Protective Order and Leave to Proceed Anonymously in

the Underlying Lawsuit based on the nature of the allegations. N.J. is subject to the jurisdiction and venue of this Court.

## JURISDICTION AND VENUE

9.

This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 because this action is between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. The Underlying Lawsuit (defined below) seeks damages in excess of $75,000.00, exclusive of interest and costs.

10.

This Court has personal jurisdiction over the Defendants because the Underlying Lawsuit (defined below) is pending in the State Court of Bibb County, Georgia, which lies within the judicial district and division of this Court, and each Defendant is present in, or has substantial contacts with, the State of Georgia.

11.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## NATURE OF ACTION

12.

This is a complaint for declaratory judgment brought pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201 to declare the rights and

other legal relations surrounding questions of actual controversy that presently exist between Owners and the Defendants.

13.

A controversy of a judicial nature presently exists among the parties which demands a declaration by this Court in order that Owners may have its rights and duties under the relevant insurance contracts determined and avoid the possible accrual of damages.

14.

Each named defendant herein has been joined in compliance with case law requiring the insurer seeking a declaratory judgment to bring into the action all individuals or entities that have a financial or other interest in the outcome of the coverage issues to be decided through declaratory judgment.

## THE UNDERLYING CLAIMS AND LAWSUIT

15.

On December 4, 2025, K.J. and N.J. filed a lawsuit against Meldimata, Mata Enterprises, Ankit Patel, B.B. Patel, and Kanta B. Patel in the State Court of Bibb County, Georgia, Civil Action File No. 25-SCCV-101565 (the "Underlying Lawsuit"). A true and accurate copy of the Complaint filed in the Underlying Lawsuit is attached hereto as **Exhibit A.**

16.

The Underlying Lawsuit alleges that K.J. and N.J. were minors who were trafficked for sex and falsely imprisoned at a motel located at 6000 Harrison Road, Macon, Georgia 31206, formerly known as the Days Inn and currently operating as the Bridgeview Inn and Suites (the "Motel"), from at least September 2011 through February 2013. See Ex. A, at ¶¶ 1-2, 30-32, 39, 41, 48, 51.

17.

The Underlying Lawsuit alleges that Mata Enterprises owned and operated the Motel during the entire period when K.J. and N.J. were allegedly trafficked and falsely imprisoned at the Motel, with B.B. Patel serving as CEO and registered agent, Ankit Patel serving as Secretary, and Kanta B. Patel serving as CFO. See Ex. A, at ¶¶ 8, 10-12.

18.

The Underlying Lawsuit alleges that Arthur Gerald Reid operated a sex-trafficking enterprise out of the Motel. See Ex. A, at ¶¶ 23, 30-33, 41-42, 50-51.

19.

The Underlying Lawsuit alleges that Reid was apprehended by law enforcement in a "highly publicized arrest" at the Motel on February 26, 2013, with three juvenile victims, including K.J. and N.J., who were falsely imprisoned in and found in motel rooms at the property. See Ex. A, at ¶¶ 28, 67.

20.

The Underlying Lawsuit alleges that Reid was subsequently federally indicted and charged with sex trafficking of minors, pleaded guilty on December 23, 2013, and was sentenced to thirty years in federal prison on March 17, 2015. See Ex. A, at ¶¶ 29, 67.

21.

The Underlying Lawsuit alleges that Meldimata was formed on October 15, 2013, and acquired the Motel from Mata Enterprises on October 21, 2013, approximately eight months after Reid's arrest at the Motel and approximately two months after his federal indictment. See Ex. A, at ¶ 9.

22.

The Underlying Lawsuit alleges that the transfer of the Motel from Mata Enterprises to Meldimata was not an arm's-length transaction; that the same individuals owned, operated, managed, and/or controlled both entities; that the property was transferred for inadequate consideration; and that the transfer was intended to shield assets and avoid liability arising from the "well-publicized sex trafficking prosecution" at the Motel. See Ex. A, at ¶¶ 13, 68, 107, 111-112, 119.

23.

Specifically, the Underlying Lawsuit alleges that the October 21, 2013 transfer of the property from Mata Enterprises to Meldimata, which occurred eight months

after Reid's arrest and two months after his indictment, "demonstrates Defendants' knowledge of the liability arising from the sex trafficking at the property and an attempt to shield assets from potential claims." See Ex. A, at ¶ 68.

24.

The Underlying Lawsuit further alleges that the transfer was a "Fraudulent Transfer to Escape Liability" and that it "was effectuated with the intent to avoid liability for the sex trafficking and other torts committed at the property." See Ex. A, at ¶ 107.

25.

The Underlying Lawsuit alleges that "Defendants permitted prostitution, and ultimately sex trafficking, because Defendants profited from the frequent rental of rooms at the Days Inn that were used for prostitution and sex trafficking, including the rooms in which Plaintiffs were trafficked." See Ex. A, at ¶ 22.

26.

In the Underlying Lawsuit, K.J. and N.J. assert claims for Public Nuisance and Nuisance Per Se, Punitive Damages, Successor Liability, Piercing the Corporate Veil, and Attorney's Fees and Expenses of Litigation pursuant to O.C.G.A. § 13-6-11. See Ex. A, generally.

9

27.

In the Underlying Lawsuit, K.J. and N.J. seek compensatory and other damages; punitive damages; attorney's fees and expenses of litigation; a determination that Meldimata is liable as a successor to Mata Enterprises; and a determination that the corporate veil should be pierced to hold Ankit Patel, B.B. Patel, and Kanta B. Patel personally liable for the alleged harms. See Ex. A, Prayer for Relief.

## THE INSURANCE POLICIES

28.

Owners issued Tailored Protection Policies to Mata Enterprises, Inc. d/b/a Days Inn-Macon, policy number 024618-48825867-11, with an effective policy period of June 16, 2011 to June 16, 2012, and policy number 024618-48060782-12, with an effective policy period of June 16, 2012 to June 16, 2013. True and accurate copies of those policies are attached hereto as **Exhibit B**. See Ex. B, Declarations.

29.

Owners issued a third Tailored Protection Policy, policy number 024618-48060782-13, for the policy period June 16, 2013 to June 16, 2014. The named insured was changed from Mata Enterprises, Inc. d/b/a Days Inn-Macon to Meldimata LLC by endorsement effective March 13, 2014. A true and accurate copy

of that policy and endorsement is attached hereto as **Exhibit C**. See Ex. C, Declarations and Named Insured Endorsement.

30.

The policies attached as **Exhibits B** and **C** are collectively referred to herein as the "Policies."

31.

The alleged trafficking period in the Underlying Lawsuit is September 2011 through February 2013. Thus, Mata Enterprises was the named insured during the entire alleged trafficking period. The Underlying Lawsuit alleges that Ankit Patel, B.B. Patel, and Kanta B. Patel were officers of Mata Enterprises during the relevant period. See Ex. A, at ¶¶ 8, 10-12, 17; Ex. B, Declarations.

32.

The Policies contain Commercial General Liability Coverage Form 55300 (7-05), which provides, in pertinent part:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

*Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.*

*Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.*

*The word "insured" means any person or organization qualifying as such under Section II - Who Is An Insured.*

*Other words and phrases that appear in quotation marks have special meaning. Refer to Section V - Definitions.*

## SECTION I - COVERAGES

## COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1. Insuring Agreement

**a.** *We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. We may at our discretion investigate any claim or "occurrence" and settle any claim or "suit" that may result. [...]*

**b.** *This insurance applies to "bodily injury" and "property damage" only if:*

**(1)** *The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";*
**(2)** *The "bodily injury" or "property damage" occurs during the policy period; and*
**(3)** *Prior to the policy period , no insured listed under Paragraph 1. of Section II - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred , in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period , that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.*

**c.** *"Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:*

**(1)** *Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;*

12

*(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or*

*(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.*

[…]

***COVERAGE B. PERSONAL INJURY AND ADVERTISING INJURY LIABILITY***

**1. *Insuring Agreement***

*a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. We may at our discretion investigate any claim or offense and settle any claim or "suit" that may result. […]*

*b. This insurance applies to "personal injury" and "advertising injury" only if:*

*(1) The "personal injury" or "advertising injury" is caused by an offense arising out of your business; and*

*(2) The offense causing the "personal injury" or "advertising injury" was committed in the "coverage territory" during the policy period.*

See Ex. B, Commercial General Liability Coverage Form 55300 (7-05), Section I, Coverage A, ¶ 1, Coverage B, ¶ 1; Ex. C, Commercial General Liability Coverage Form 55300 (7-05), Section I, Coverage A, ¶ 1, Coverage B, ¶ 1.

33.

Coverage A applies to "bodily injury" only if the bodily injury is caused by an "occurrence" that takes place in the coverage territory and the bodily injury occurs

during the policy period.  See Ex. B, Commercial General Liability Coverage Form 55300 (7-05), Section I, Coverage A, ¶ 1.b.; Ex. C, Commercial General Liability Coverage Form 55300 (7-05), Section I, Coverage A, ¶ 1.b.

34.

The Policies define "bodily injury" as "bodily injury, bodily sickness or bodily disease sustained by a person, including death resulting from any of these at any time." See Ex. B, Commercial General Liability Coverage Form 55300 (7-05), Section V, Definitions, ¶ 4; Ex. C, Commercial General Liability Coverage Form 55300 (7-05), Section V, Definitions, ¶ 4.

35.

The Policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." See Ex. B, Commercial General Liability Coverage Form 55300 (7-05), Section V, Definitions, ¶ 14; Ex. C, Commercial General Liability Coverage Form 55300 (7-05), Section V, Definitions, ¶ 14.

36.

The Policies also provide Coverage B for sums that the insured becomes legally obligated to pay as damages because of "personal injury" to which the insurance applies, and provide a duty to defend an insured against any "suit" seeking those damages. See Ex. B, Commercial General Liability Coverage Form 55300 (7-

14

05), Section I, Coverage B, ¶ 1; Ex. C, Commercial General Liability Coverage Form 55300 (7-05), Section I, Coverage B, ¶ 1.

37.

Coverage B applies to "personal injury" only if it is caused by an offense arising out of the insured's business and the offense causing the "personal injury" was committed during the policy period.  See Ex. B, Commercial General Liability Coverage Form 55300 (7-05), Section I, Coverage B, ¶ 1.b.; Ex. C, Commercial General Liability Coverage Form 55300 (7-05), Section I, Coverage B, ¶ 1.b.

38.

"Personal injury" means injury, other than "bodily injury," arising out of certain enumerated offenses, including false arrest, detention or imprisonment. See Ex. B, Commercial General Liability Coverage Form 55300 (7-05), Section V, Definitions, ¶ 15.a.; Ex. C, Commercial General Liability Coverage Form 55300 (7-05), Section V, Definitions, ¶ 15.a.

39.

Under **Section II - Who Is An Insured**, the Policies provide in pertinent part:

*1. If you are designated in the Declarations as:*

    *[...]*

    *d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your*

> *officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.*
>
> *[...]*
>
> **4.** *Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:*
>
> > **a.** *Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;*
> >
> > **b.** *Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and*
> >
> > **c.** *Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.*
>
> *No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.*

See Ex. B, Commercial General Liability Coverage Form 55300 (7-05), Section II;

Ex. C, Commercial General Liability Coverage Form 55300 (7-05), Section II.

40.

The Policies contain the following conditions precedent to coverage:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

*[. . .]*

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

> **a.** *You must see to it that we are notified as soon as practicable of an*

16

*"occurrence" or an offense which may result in a claim. To the extent possible, notice should include:*

*(1) How, when and where the "occurrence" or offense took place;*

*(2) The names and addresses of any injured persons and witnesses; and*

*(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.*

**3.    *Legal Action Against Us***

*No person or organization has a right under this Coverage Part:*

***a.*** *To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or*

***b.*** *To sue us on this Coverage Part unless all of its terms have been fully complied with.*

[. . .]

See Ex. B, Commercial General Liability Coverage Form 55300 (7-05), Section IV,

¶¶ 2-3; Ex. C, Commercial General Liability Coverage Form 55300 (7-05), Section

IV, ¶¶ 2-3.

41.

The Policies also contain Commercial General Liability Plus Endorsement,

Form 55352 (10-08), which provides, in pertinent part:

**5. *BROADENED KNOWLEDGE OF OCCURRENCE***

*Under **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**, the following paragraph is added:*

17

*Paragraphs **a.** and **b.** of this condition will not serve to deny any claim for failure to provide us with notice as soon as practicable after an "occurrence" or an offense which may result in a claim:*

***a.** If the notice of a new claim is given to your "employee"; and*

***b.** That "employee" fails to provide us with notice as soon as practicable.*

*This exception shall not apply:*

***a.** To you; or*

***b.** To any officer, director, partner, risk manager or insurance manager of yours.*

See Ex. B, Commercial General Liability Plus Endorsement, Form 55352 (10-08), ¶ 5; Ex. C, Commercial General Liability Plus Endorsement, Form 55352 (10-08), ¶ 5.

## NOTICE AND RESERVATION OF RIGHTS

42.

The Underlying Lawsuit alleges that the "occurrence" or offense giving rise to the claims took place during September 2011 through February 2013, culminating in Reid's arrest at the Motel with three juvenile victims, including K.J. and N.J., on February 26, 2013. See Ex. A, at ¶¶ 28, 30-32, 39, 41, 48, 51.

43.

The Underlying Lawsuit further alleges that the transfer of the Motel from Mata Enterprises to Meldimata occurred shortly after Reid's arrest and indictment and demonstrates Defendants' knowledge of potential liability and an attempt to

18

shield assets from potential claims arising out of the sex trafficking at the Motel. <u>See</u> Ex. A, at ¶¶ 68, 107, 119.

44.

Owners did not receive notice of the occurrences, offenses, or claims that are the subject of Underlying Lawsuit until on or about February 12, 2026, more than twelve years after Reid's arrest and after the Underlying Lawsuit had been filed.

45.

On March 6, 2026, and March 9, 2026, Owners issued reservation of rights letters to the insured defendants in the Underlying Lawsuit. True and accurate copies of the March 6, 2026 and March 9, 2026 reservation of rights letters are attached hereto as **Exhibit D**.

46.

On June 1, 2026, Owners issued supplemental reservation of rights letters to the insured defendants in the Underlying Lawsuit. True and accurate copies of the supplemental reservation of rights letters are attached hereto as **Exhibit E**.

47.

Owners is presently providing a defense to the defendants in the Underlying Lawsuit subject to a full and complete reservation of rights.

48.

Faced with uncertainty as to its duties and obligations under the Policies, Owners agreed to provide a defense to the defendants in the Underlying Lawsuit subject to a full and complete reservation of rights, and timely filed this declaratory judgment action seeking a determination of its duties and obligations under the Policies.

## COUNT I – DECLARATORY JUDGMENT – LATE NOTICE

49.

Owners hereby realleges and incorporates paragraphs 1 through 48 of this Complaint as if fully set forth herein.

50.

The Policies contain a condition precedent to coverage requiring an insured to see to it that Owners is notified as soon as practicable of an "occurrence" or offense which may result in a claim. See Ex. B, Commercial General Liability Coverage Form 55300 (7-05), Section IV, ¶¶ 2-3; Ex. C, Commercial General Liability Coverage Form 55300 (7-05), Section IV, ¶¶ 2-3.

51.

The alleged sex trafficking of minors at the Motel, Reid's arrest at the Motel with juvenile victims on February 26, 2013, and the alleged "bodily injury" and "personal injury" arising therefrom constitute, or at a minimum are alleged to

20

constitute, an "occurrence" or offense which may result in, and have in fact resulted in, a claim under the Policies.

52.

The Underlying Lawsuit alleges that Reid's February 26, 2013 arrest at the Motel was "highly publicized," that Reid was federally indicted in August 2013 for sex trafficking children at the Motel, and that the Motel was transferred from Mata Enterprises to Meldimata on October 21, 2013, eight months after Reid's arrest and two months after his indictment, which "demonstrates Defendants' knowledge of the liability arising from the sex trafficking at the property and an attempt to shield assets from potential claims." See Ex. A, at ¶¶ 67-68.

53.

On or about February 26, 2013, Mata Enterprises, Ankit Patel, B.B. Patel, and Kanta B. Patel knew Reid was arrested at the Motel.

54.

Mata Enterprises, Ankit Patel, B.B. Patel, and Kanta B. Patel had knowledge of an "occurrence" or offense that could result in a claim on or about February 26, 2013, following Reid's arrest at the Motel.

21

55.

In August 2013, Mata Enterprises, Ankit Patel, B.B. Patel, and Kanta B. Patel learned that Reid was federally indicted in connection with sex trafficking minors at the Motel.

56.

Mata Enterprises, Ankit Patel, B.B. Patel, and Kanta B. Patel had knowledge of an "occurrence" or offense that could result in a claim in August 2013, following Reid's federal indictment for sex trafficking minors at the Motel.

57.

Mata Enterprises, Ankit Patel, B.B. Patel, and Kanta B. Patel transferred the Motel to Meldimata shortly after Reid's arrest and indictment to avoid liability and shield assets from potential claims arising from the sex trafficking at the property.

58.

Owners did not receive notice of the occurrence, offenses, or claims that are the subject of the Underlying Lawsuit until on or about February 12, 2026, more than twelve years after Mata Enterprises, Ankit Patel, B.B. Patel, and Kanta B. Patel learned that Reid was arrested and indicted for sex trafficking minors at the Motel.

59.

Such a delay was not notice "as soon as practicable" as required by the Policies and was unreasonable as a matter of law.

60.

As a result, Owners is entitled to a judgment declaring that it owes no duty to defend or indemnify Mata Enterprises, Ankit Patel, B.B. Patel, or Kanta B. Patel in connection with the alleged occurrences, offenses, or claims that are the subject of the Underlying Lawsuit because notice was not provided as soon as practicable as required by the conditions precedent to coverage in the Policies.

## COUNT II - DECLARATORY JUDGMENT - NO CONTRACTUAL COVERAGE FOR MELDIMATA LLC

61.

Owners hereby realleges and incorporates paragraphs 1 through 60 of this Complaint as if fully set forth herein.

62.

The Underlying Lawsuit alleges that K.J. and N.J. were trafficked and falsely imprisoned at the Motel from at least September 2011 through February 2013. See Ex. A, at ¶¶ 17, 51.

63.

The Underlying Lawsuit alleges that Meldimata was not formed until October 15, 2013, and did not acquire the Motel until October 21, 2013. See Ex. A, at ¶ 9.

64.

Meldimata did not become a named insured under an Owners policy until March 13, 2014. See Ex. C, Declarations and Named Insured Endorsement.

23

65.

Thus, the alleged "bodily injury" occurred, and the offense causing the alleged "personal injury" was committed, before Meldimata existed, before it acquired the Motel, and before it became a named insured under any Owners policy.

66.

Owners is entitled to a judgment declaring that it owes no contractual duty to defend or indemnify Meldimata in connection with the occurrences, offenses, or claims that are the subject of the Underlying Lawsuit.

### **PRAYER FOR RELIEF**

**WHEREFORE**, Owners respectfully prays as follows:

1) That this Court declare that Owners has no duty to defend or indemnify Mata Enterprises, Inc., Ankit Patel, B.B. Patel, or Kanta B. Patel in connection with the alleged occurrence, offenses, or Underlying Lawsuit because notice was not provided as soon as practicable as required by the Policies;

2) That this Court declare that Owners has no contractual duty to defend or indemnify Meldimata, LLC d/b/a Days Inn & Bridgeview Inn and Suites in connection with the alleged occurrence, offenses, or Underlying Lawsuit;

3) That declaratory judgment be entered in Owners' favor against all Defendants in this action;

4)      That this Court bind each and every named party herein by said declaratory judgment;

5)      That the Court award Owners all costs, expenses, and attorney's fees that it is entitled to receive; and

6)      That this Court enter an order granting such other and further relief as it deems just and proper.

This 24th day of June, 2026.

Respectfully submitted,

LAVENDER HOFFMAN, LLC

/s/ Chad M. Brock
Chad M. Brock
Georgia Bar No. 357719
Sarah S. Dumbacher
Georgia Bar No. 713171
*Attorneys for Owners Ins. Co.*

750 Hammond Drive
Building 2, Suite 200
Atlanta, GA 30328
Phone/Fax: 404.400.4500
cbrock@lhefirm.com
sdumbacher@lhefirm.com