# EXHIBIT

# A

⊟ EFILED IN OFFICE
CLERK OF STATE COURT
BIBB COUNTY, GEORGIA

**25-SCCV-101565**
**Jeffrey Hanson**
**DEC 04, 2025 12:04 PM**

Katie Hall Lippert, Clerk
State Court of Bibb County

**IN THE STATE COURT OF BIBB COUNTY**
**STATE OF GEORGIA**

K. J.
AND N. J.

      **Plaintiffs,**

      **v.**

**MELDIMATA, LLC d/b/a DAYS INN &**
**BRIDGEVIEW INN AND SUITES;**
**MATA ENTERPRISES, INC.; ANKIT**
**PATEL; B.B. PATEL; and KANTA B.**
**PATEL,**

      **Defendants.**

**CIVIL ACTION NO. _____**

**JURY TRIAL DEMANDED**

**COMPLAINT FOR DAMAGES**

COMES NOW, Plaintiffs, who file this Complaint for Damages against Defendants Meldimata, LLC, d/b/a Days Inn and Bridgeview Inn and Suites; Mata Enterprises, Inc.; Ankit Patel; B.B. Patel; and Kanta B. Patel, respectfully showing the following:

**INTRODUCTION**

1.

Defendants' motel, located at 6000 Harrison Road, Macon, Georgia 31206 formerly operated as the Days Inn and currently operating as the Bridgeview Inn and Suites (the "motel", (the "Days Inn" or "the motel"), is a public nuisance. The nuisance at the property is the rampant crime at the motel that is either permitted or at least willfully ignored. The nuisance at the property has been ongoing and continuous while Defendants have owned and operated the property for more than 25 years. Plaintiffs bring this action for the damages caused to them by Defendants' nuisance of permitting crime, especially sex crimes.

2.

In this case, two minors were trafficked for sex at Defendants' Bibb County motel. K.J. and N.J. were both minors who were trafficked for sex at the motel by Arthur Gerald Reid for years, and up to the present, Defendants knew or should have known their motel was a hotbed for prostitution, crimes against women, dangerous illegal activity, drugs, violence, missing and runaway underage girls, harboring wanted felons, sex crimes, and sex trafficking, yet Defendants negligently, recklessly, knowingly, and/or intentionally allowed these nuisances to continue because it was profitable for Defendants to do so.

3.

The forced sexual exploitation and trafficking of children and young women is an epidemic in Georgia and particularly in Bibb County. In 2018 the National Human Trafficking Hotline ranked Georgia fourth among states in human trafficking.

4.

Defendants' motel has been the scene of scores and scores of sex crimes, crimes against women, and crimes related to sex trafficking. The motel has negligently, recklessly, knowingly, and/or intentionally allowed this conduct to occur for more than a decade.

5.

Prostitution, crimes against women, dangerous illegal activity, drugs, violence, missing and runaway underage girls, harboring wanted felons, sex crimes, and sex trafficking have all been common occurrences at the Days Inn for over a decade. Despite this, Defendants chose to ignore, condone, facilitate, support and permit this activity at the Days Inn. By negligently, recklessly, knowingly, and/or intentionally permitting their motel to be a hotbed for prostitution, crimes against women, dangerous illegal activity, drugs, violence, missing and runaway underage girls,

harboring wanted felons, sex crimes, and sex trafficking, the illegal activity at the motel constitutes a public nuisance under Georgia common and statutory law. As a direct result of this public nuisance, Plaintiffs' trafficker selected this nuisance motel as the location to sell Plaintiffs, falsely imprison Plaintiffs, and Plaintiffs were harmed and damaged as a direct result of the motel's long running status as a nuisance under Georgia law.

## PARTIES, JURISDICTION, AND VENUE

6.

Plaintiff K.J. is a natural person and resident of the State of Georgia. She submits herself to the jurisdiction of this Court by filing this complaint. K.J. is identified using initials to prevent the public disclosure of her name. Plaintiffs' counsel will disclose K.J.'s full name to defense counsel as soon as they are known or as soon as an appropriate protective order is in place. K.J. was a minor when the events that are the subject of this lawsuit occurred.

7.

Plaintiff N.J. is a natural person and resident of the State of Georgia. She submits herself to the jurisdiction of this Court by filing this complaint. N.J. is identified using initials to prevent the public disclosure of her name. Plaintiffs' counsel will disclose N.J.'s full name to defense counsel as soon as they are known or as soon as an appropriate protective order is in place. N.J. was a minor when the events that are the subject of this lawsuit occurred.[1]

8.

Defendant Mata Enterprises, Inc. is a Georgia Domestic Profit Corporation that was formed

---

[1] Plaintiffs have concurrently filed a Motion for Protective Order and Leave to Proceed Anonymously based on the nature of the allegations in the Complaint, which include the sex trafficking of the two minor Plaintiffs. Plaintiffs' anonymity will provide for their own personal safety and will protect them from the public disclosure of details which are intimate and personal in nature.

on July 17, 1997, and administratively dissolved on December 31, 2015. Mata Enterprises, Inc. owned and operated the motel located at 6000 Harrison Road, Macon, Georgia 31206 under the trade name Days Inn from at least 1998 through October 21, 2013, including during the entire time period when Plaintiffs K.J. and N.J. were trafficked at the property. The principal office address for Mata Enterprises, Inc. was 6000 Harrison Road, Macon, Georgia 31206-4742.

9.

Defendant Meldimata, LLC, is a Georgia Domestic Limited Liability Company with its principal office address located at 6000 Harrison Road, Macon, Georgia 31206. Defendant Meldimata, LLC was formed on October 15, 2013, and acquired the property at 6000 Harrison Road from Mata Enterprises, Inc. on October 21, 2013, approximately eight months after Arthur Gerald Reid's arrest for sex trafficking of minors at the property on February 26, 2013, and approximately two months after Reid's federal indictment. Defendant Meldimata, LLC formerly operated the property under the trade name Days Inn and currently operates the property under the trade name Bridgeview Inn and Suites.

10.

Defendant Ankit Patel (also known as Ankit B Patel) is a natural person with a physical address at 6000 Harrison Road, Macon, Georgia 31206, in Bibb County. Defendant Ankit Patel is the registered agent for Defendant Meldimata, LLC. Upon information and belief, Defendant Ankit Patel is an owner, operator, manager, and/or person with control over the operations of the motel. Defendant Ankit Patel served as Secretary of Defendant Mata Enterprises, Inc. at the time Plaintiffs were trafficked at the property and during Reid's sex trafficking operation at the motel.

11.

Defendant B.B. Patel is a natural person with a physical address at 6000 Harrison Road,

Macon, Georgia 31206, in Bibb County. Defendant B.B. Patel served as the registered agent and CEO of Defendant Mata Enterprises, Inc. at the time Plaintiffs were trafficked at the property and during Reid's sex trafficking operation at the motel. Upon information and belief, Defendant B.B. Patel is an owner, operator, manager, and/or person with control over the operations of the motel

12.

Defendant Kanta B. Patel is a natural person. Defendant Kanta B. Patel served as CFO of Defendant Mata Enterprises, Inc. at the time Plaintiffs were trafficked at the property and during Reid's sex trafficking operation at the motel. Upon information and belief, Defendant Kanta B. Patel is an owner, operator, manager, and/or person with control over the operations of the motel.

13.

Defendants Meldimata, LLC and Mata Enterprises, Inc. should be treated as a single entity and are liable as successors, alter egos, and/or as a continuation of the same business enterprise for the following reasons:

   a. The transfer of the property from Mata Enterprises, Inc. to Meldimata, LLC occurred on October 21, 2013, approximately eight months after Reid's arrest at the property for sex trafficking of minors, including Plaintiffs K.J. and N.J., and approximately two months after Reid's federal indictment for sex trafficking of children at the motel;

   b. The timing of the transfer suggests an attempt to shield assets and avoid liability arising from the well-publicized sex trafficking prosecution at the property;

   c. The corporate entities share substantially identical ownership and management. Ankit Patel served as Secretary of Mata Enterprises, Inc. and is the registered agent for Meldimata, LLC. B.B. Patel served as CEO and registered agent of Mata Enterprises,

Inc. Kanta B. Patel served as CFO of Mata Enterprises, Inc. Upon information and belief, these same individuals own, operate, manage, and/or control Meldimata, LLC;

d. Both entities operated the same motel at the same location (6000 Harrison Road, Macon, Georgia 31206) under the same or similar trade names (Days Inn);

e. Both entities maintained their principal office address at the motel property itself;

f. The transfer occurred through a related-party transaction from a corporate entity to a limited liability company controlled by the same family members;

g. Upon information and belief, the business operations, employees, management practices, and day-to-day operations remained substantially identical before and after the transfer;

h. Upon information and belief, the transfer was not an arm's-length transaction but rather a reorganization among related parties;

i. The sale price of $485,000 on October 21, 2013, was substantially below the property's assessed value and the prior sale price of $1,900,000 in 1998, suggesting the transfer was not a bona fide market transaction;

j. Despite the change in corporate form, the same dangerous conditions, lack of security measures, and tolerance for prostitution and sex trafficking continued unabated at the property both before and after the transfer;

k. The corporate structure was used to perpetuate the same nuisance conditions while attempting to avoid liability for the sex trafficking and other criminal activity that occurred under the prior entity's ownership;

l.  Mata Enterprises, Inc. was administratively dissolved on December 31, 2015, suggesting abandonment of the corporate entity after transferring its primary asset to avoid responsibility for the harms caused to Plaintiffs and others; and

m.  The overlapping ownership, management, operations, location, and timing of the transfer demonstrate that Meldimata, LLC is the successor-in-interest to Mata Enterprises, Inc. and/or that the corporate form should be disregarded to hold the true owners and operators liable for the nuisance conditions and resulting harms.

14.

The corporate veil should be pierced, and Defendants Ankit Patel, B.B. Patel, and Kanta B. Patel should be held individually liable because they exercised complete domination and control over the corporate entities, used the corporate form to perpetuate fraud or wrongdoing by facilitating sex trafficking of minors, and it would be unjust and inequitable to allow them to hide behind the corporate form given their personal knowledge and involvement in the operations that permitted the sex trafficking of Plaintiffs.

15.

Jurisdiction and venue are proper herein.

**FACTUAL BACKGROUND**

16.

Defendants own and operate the motel at 6000 Harrison Road, Macon, Georgia 31206, formerly known as the Days Inn and currently operating as the Bridgeview Inn and Suites.

17.

At the time Plaintiffs K.J. and N.J. were trafficked and falsely imprisoned at the motel from at least September 2011 through February 2013, the property was owned and operated by

Defendant Mata Enterprises, Inc., with Defendants B.B. Patel serving as CEO and registered agent, Ankit Patel serving as Secretary, and Kanta B. Patel serving as CFO.

18.

For over a decade up to the present date, prostitution, crimes against women, dangerous illegal activity, drugs, violence, missing and runaway underage girls, harboring wanted felons, sex crimes, and sex trafficking were all common occurrences at the Days Inn motel.

19.

Defendants knew or should have known that all of this activity was occurring at the Days Inn.

20.

Despite having actual or constructive knowledge of this activity, Defendants failed to take reasonable and necessary steps to stop such illegal and dangerous activities from occurring.

21.

Defendants knew of, condoned, and permitted the widespread prostitution and sex trafficking at the Days Inn.

22.

Defendants permitted prostitution, and ultimately sex trafficking, because Defendants profited from the frequent rental of rooms at the Days Inn that were used for prostitution and sex trafficking, including the rooms in which Plaintiffs were trafficked.

***Arthur Gerald Reid's Sex Trafficking Operation at the Days Inn***

23.

Arthur Gerald Reid was a known sex trafficker who operated extensively out of the Days Inn from at least September 2011 through February 2013 and beyond.

24.

Reid was a violent and dangerous sex trafficker who used physical violence, weapons (including a BB gun that his victims believed to be real), threats of death, and coercion to force multiple young women and girls into prostitution.

25.

Reid advertised his minor victims on Backpage.com and other websites, and his advertisements appeared on at least 15 different erotic websites through web crawlers that republished Backpage content.

26.

Reid rented rooms at the Days Inn in his own name for the purpose of prostituting his minor victims.

27.

Reid kept a BB gun that appeared to be a real firearm in his motel rooms at the Days Inn. He used this weapon to threaten and intimidate his victims, including Plaintiffs, by holding it to their heads and threatening to "blow their brains out."

28.

On February 26, 2013, Reid was apprehended by law enforcement at the motel with three juvenile victims, including Plaintiffs K.J. and N.J., who were falsely imprisoned in and found in Rooms 228 and 319. The BB gun was found hidden in the air conditioning unit of the room, exactly where one of the victims had told police it would be.

29.

Reid was subsequently indicted and charged with sex trafficking of children in federal court. He pleaded guilty on December 23, 2013, and was sentenced to 30 years (360 months) in

federal prison on March 17, 2015.

30.

The federal prosecution established that Reid had been prostituting victims at various motels in Macon, Georgia, including the Days Inn, from September 2011 through his arrest in February 2013.

31.

During this time period, Reid prostituted multiple victims at the motel, including Plaintiffs K.J. and N.J., who were both minors at the time.

### K.J.'s Trafficking at the Days Inn

32.

K.J. was trafficked for sex by Arthur Gerald Reid at the Days Inn motel. K.H. was illegally harbored, falsely imprisoned, and sold for sex at the motel.

33.

Reid brought K.J. to the motel because the motel and the surrounding area were known to be common locations for prostitution, sex crimes, and sex trafficking to occur, and because of that, Reid knew he would be allowed to sell minor girls for sex there without interference.

34.

Reid was violent with K.J., using physical violence and threats to force her compliance.

35.

Reid advertised K.J. on Backpage.com and other erotic websites for the purpose of prostitution.

36.

Reid rented rooms at the Days Inn in his own name for the purpose of prostituting K.J. and

his other victims.

37.

K.J. was sold for sex to multiple men at the Days Inn.

38.

Reid used the BB gun to threaten and intimidate K.J. and his other victims at the Days Inn.

39.

K.J. was present at the motel when Reid was arrested by law enforcement on February 26, 2013.

40.

The Days Inn staff knew or should have known that Reid was trafficking women at their motel, based on the obvious signs of prostitution and sex trafficking occurring there, including young women coming and going from rooms, multiple men visiting the same rooms for short periods of time, and the payment patterns for rooms.

### *N.J.'s Trafficking at the Days Inn*

41.

N.J. was trafficked for sex by Arthur Gerald Reid at the Days Inn motel. N.J. was illegally harbored, falsely imprisoned, and sold for sex at the motel.

42.

Reid brought N.J. to the Days Inn because the motel and the surrounding area were known to be common locations for prostitution, sex crimes, and sex trafficking to occur, and because of that, Reid knew he would be allowed to sell women for sex there without interference.

43.

Reid was violent with N.J., using physical violence and threats to force her compliance.

44.

Reid advertised N.J. on Backpage.com and other erotic websites for the purpose of prostitution.

45.

Reid rented rooms at the Days Inn in his own name for the purpose of prostituting N.J. and his other victims.

46.

N.J. was sold for sex to multiple men at the Days Inn.

47.

Reid used the BB gun to threaten and intimidate N.J. and his other victims at the Days Inn.

48.

N.J. was present at the motel when Reid was arrested by law enforcement on February 26, 2013.

49.

The motel staff knew or should have known that Reid was trafficking minor girls at their motel, based on the obvious signs of prostitution and sex trafficking occurring there.

### Other Trafficking Victims at the Days Inn

50.

In addition to Plaintiffs K.J. and N.J., Reid trafficked multiple other victims at the Days Inn, demonstrating that the motel was a known location for sex trafficking operations.

51.

Federal court records establish that Reid trafficked at least three juvenile victims at the motel from September 2011 through February 2013. Plaintiffs K.J. and N.J. were two of these

three juvenile victims.

52.

The third juvenile victim was sold for sex by Reid at the Days Inn from September 2011 through February 2013. Reid advertised her on Backpage.com, paid for motel rooms in his name, and was physically violent toward her.

53.

The third juvenile victim stated in a written statement to law enforcement that Reid "forced her to sell her body since approximately 2011" and that Reid "also threatened to kill her."

54.

Reid forced the three juvenile victims, including Plaintiffs K.J. and N.J., to participate in the production of child pornography at the motel.

55.

Reid filmed a video at the motel showing three juvenile victims, including Plaintiffs, naked in a bathtub engaging in sexual acts. This video was found on Reid's cellular telephone following a forensic examination pursuant to a search warrant.

56.

FBI Special Agent Kimberly Granich testified at Reid's sentencing hearing that Reid "persuaded, coerced, and forced Victim Number Two to engage in commercial sex acts with strangers" and that Reid "persuaded, coerced, and forced Victim Number Two to engage in a prohibited sex act," specifically the production of child pornography.

57.

Reid used the BB gun to threaten the victims. Agent Granich testified that Reid "held it up to one of the victim's head and told her he was going to blow her brains out."

58.

An adult female was also present with Reid and the three juvenile victims when Reid was arrested at the motel on February 26, 2013.

59.

When law enforcement arrived at the motel on February 26, 2013, they found Reid in Room 228 with all three juvenile victims (including Plaintiffs K.J. and N.J.) and the adult female.

60.

Law enforcement had been tipped off that Reid was at the Days Inn after receiving information that victims were being prostituted there and that Reid was using Backpage.com to advertise victims.

61.

The victims, including Plaintiffs K.J. and N.J., told law enforcement that they believed the BB gun was a real firearm and that Reid used it to threaten and intimidate them.

62.

Reid admitted in his federal plea agreement that he "utilized backpage.com to advertise" his victims' prostitution services and that he "was physically violent" toward his victims.

63.

Reid admitted that "the money [the victims] earned from prostitution paid for an apartment in Macon for defendant."

64.

Subpoenas served on Backpage.com revealed numerous advertisements for Reid's victims, including Plaintiffs K.J. and N.J., and these advertisements were republished on at least 15 different erotic websites, including The Erotic Review, My Provider Guide, Escort Phone Search,

City Vibe, and Erotic Mugshots.

*Defendants' Knowledge of the Nuisance*

65.

These crimes perpetrated against Plaintiffs were negligently, recklessly, knowingly, and/or intentionally allowed to occur by Defendants and at Defendants' motel.

66.

Defendants Mata Enterprises, Inc., B.B. Patel, Ankit Patel, and Kanta B. Patel knew or should have known of instances of prostitution, crimes against women, dangerous illegal activity, drugs, violence, missing and runaway underage girls, harboring wanted felons, sex crimes, and sex trafficking occurring at the motel prior to and during the time Plaintiffs were trafficked for sex at the Days Inn.

67.

Despite Reid's highly publicized arrest at the property on February 26, 2013, his federal indictment in August 2013 for sex trafficking of children at the motel, his guilty plea in December 2013, and his 30-year prison sentence in March 2015, Defendants have failed to implement any meaningful security measures or policies to prevent sex trafficking and prostitution at the motel.

68.

The transfer of the property from Mata Enterprises, Inc. to Meldimata, LLC on October 21, 2013, which is just eight months after Reid's arrest and two months after his indictment, demonstrates Defendants' knowledge of the liability arising from the sex trafficking at the property and an attempt to shield assets from potential claims.

69.

Upon information and belief, despite the change in corporate ownership, the same

individuals (B.B. Patel, Ankit Patel, and Kanta B. Patel) have maintained control and management of the property, and the same dangerous conditions, lack of security, and tolerance for criminal activity have continued unabated.

70.

Defendants knew or should have known of the above activity for at least the following reasons:

(a) Reid was a repeat customer who rented rooms at the Days Inn in his own name on multiple occasions over an extended period of time from 2011 through 2013;

(b) Reid rented multiple rooms at the same time at the Days Inn (Rooms 228 and 319);

(c) Multiple young women and girls were seen going in and out of the rooms rented by Reid;

(d) Multiple different men were seen going in and out of the rooms rented by Reid for short periods of time, consistent with commercial sex activity;

(e) Reid was advertising his victims on Backpage.com and other websites with phone numbers connected to the Days Inn;

(f) Reid's minor victims were present at the motel for extended periods of time;

(g) There were obvious signs of prostitution occurring at the motel, including young women in revealing clothing, high traffic of men to certain rooms, and cash payments for rooms;

(h) Law enforcement had been investigating prostitution and sex trafficking at the Days Inn;

(i) On February 26, 2013, law enforcement came to the Days Inn with information that prostitution and sex trafficking were occurring there;

(j) Law enforcement obtained motel room records from Defendants showing Reid's rental history;

(k) The motel was staffed with front desk employees who checked in guests and should have observed the suspicious activity;

(l) The motel had security measures and staff who should have been monitoring the premises;

(m) Reid kept a weapon (the BB gun) in his room that was used to threaten victims;

(n) There were likely complaints, disturbances, or other incidents involving Reid and his victims at the motel; and

(o) The pattern of activity associated with Reid's rooms was consistent with prostitution and minor sex trafficking operations.

71.

Despite actual or constructive knowledge of Reid's sex trafficking operation and other criminal activity at the motel, Defendants took no action to prevent, stop, or report this activity to law enforcement.

72.

Defendants profited from Reid's sex trafficking operation by collecting payment for the rooms he rented to traffic Plaintiffs and his other victims.

73.

Even after Reid's arrest at the Days Inn on February 26, 2013, and even after his subsequent federal indictment, guilty plea, and sentencing for sex trafficking of children at the Days Inn, Defendants have failed to implement meaningful security measures or policies to prevent sex trafficking and prostitution at their motel.

74.

The transfer of the property to Meldimata, LLC did nothing to address the underlying nuisance conditions. The same ownership and management continued to operate the property in the same manner, allowing the dangerous conditions to persist.

75.

Defendants knew or should have known of other instances of prostitution and sex crimes occurring at the Days Inn before, during, and after Plaintiffs were trafficked there.

76.

Defendant's motel had rampant crime and dangerous, violent, and illegal activity, prostitution, sex crimes, and sex trafficking occurring at its premises, all of which it knew or should have known about. Even as to those incidents that are not specifically sex trafficking crimes, the facts are consistent with trafficking and trafficking-related crimes. For instance, as an operator of a motel like Defendant would know or should have known, it is common for traffickers to require their victims to refer to them as their "boyfriend." It is common for traffickers to require their victims to rob men when they are alone, asleep, or undressed. It is also common for sex traffickers to engage in robbery and drug crimes while trafficking other victims.

77.

Despite all of the dangerous, illegal, and criminal activity at the motel, including Reid's well-documented sex trafficking operation, Defendants negligently failed to implement adequate security measures, policies, procedures, or training of any kind to prevent sex trafficking and prostitution at their motel.

78.

Defendants failed to provide proper training to their employees, including among other

things, training them on the warning signs that prostitution or sex trafficking may be occurring at the motel.

79.

Defendants failed to provide proper training to their employees on what they were supposed to do if they saw or suspected that dangerous or illegal activity, prostitution, or sex trafficking was occurring at the motel.

80.

Defendants failed to train their staff in a reasonable and uniform manner, including on how the staff were supposed to interact with the police and attempt to determine the nature and cause of crime occurring at the property, so that the motel may reasonably deter or prevent crime in the future.

81.

Defendants failed to develop a reasonable security plan to deter and prevent dangerous, violent, and illegal activity from continuing to occur at the property, including specifically prostitution, pimping, sex crimes, violence against women, and sex trafficking.

82.

Defendants had actual and constructive knowledge of prostitution, sex trafficking, and other criminal activity existing on the property and in the surrounding area before, during, and after Plaintiffs' sex trafficking there. Defendants knew or should have known of these and other violent crimes occurring on their premises and approaches.

83.

Defendants knew or should have known that they were permitting the Days Inn to be used as a place of prostitution and sex trafficking.

84.

As a proximate and foreseeable result of Defendants' violations of Georgia law, Plaintiffs sustained personal injuries, mental and emotional pain and suffering, experienced mental anguish, and suffered other damages as will be proven at trial. Plaintiffs bring each and every claim permissible under Georgia law against Defendants for their injuries suffered in the incidents at issue and seek to recover for all special damages, economic losses, medical expenses, necessary expenses, pain and suffering, and all compensatory, special, actual, general, and punitive damages permissible under Georgia law. Plaintiffs seek all compensatory, special, economic, consequential, general, punitive, and all other damages permissible under Georgia law, including, but not limited to:

    (a) Personal injuries;

    (b) Past, present, and future conscious pain and suffering;

    (c) Loss of enjoyment of life;

    (d) Medical expenses;

    (e) Mental anguish and emotional distress;

    (f) Loss of past, present, and future wages;

    (g) Incidental expenses; and

    (h) All special, compensatory, economic, punitive, and other damages permissible under Georgia law.

## <u>COUNT ONE</u>
**(Nuisance)**

85.

Plaintiffs incorporate the Paragraphs above, as if fully set forth herein.

86.

O.C.G.A. § 41-1-1 provides that "A nuisance is anything that causes hurt, inconvenience, or damage to another and the fact the act done may otherwise be lawful shall not keep it from being a nuisance. The inconvenience complained of shall not be fanciful, or such as would affect only one of fastidious taste, but it shall be such as would affect an ordinary, reasonable man."

87.

O.C.G.A. § 41-1-2 provides that "Nuisances are either public or private. A public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals. A private nuisance is one limited in its injurious effects to one or a few individuals."

88.

O.C.G.A. § 41-1-3 provides that "A public nuisance generally gives no right of action to any individual. However, if a public nuisance in which the public does not participate causes special damage to an individual, such special damage shall give a right of action."

89.

O.C.G.A. § 41-3-1 provides that "Whosoever shall knowingly erect, establish, maintain, use, own, or lease any building, structure, or place for the purposes of sexually related charges shall be guilty of maintaining a nuisance; and the building, structure, or place, and the ground itself in or upon which such sexually related charges occurred or were conducted, permitted, carried on, continued, or shall exist, and the furniture, fixtures, and other contents of such building or structure shall be deemed to be a nuisance."

90.

O.C.G.A. § 41-3-1 defines "sexually related charges" to mean trafficking a person for sexual servitude, public indecency, prostitution, keeping a place of prostitution, pimping,

pandering, or masturbation for hire.

*Public Nuisance*

91.

The Days Inn's history of rampant crime and illegal sex activity, including Reid's extensive sex trafficking operation, created a spillover effect that led to other crime occurring in the surrounding area.

92.

The Days Inn caused or contributed to a blighting effect on the surrounding community, so that the Days Inn negatively damaged all persons who came into contact with the illegal sex crimes on its premises, although the effects on each person may have varied.

93.

The illegal prostitution and sex trafficking nuisance occurring at the Days Inn had an appreciable blighting effect on the surrounding community, permitting persons of questionable character, and encouraged idleness, loitering, vagrancy, and had a tendency to breed crime and debauch the morals of the community.

94.

The public nuisance at the Days Inn was the rampant crime the motel permitted, including illegal prostitution and sex trafficking.

95.

The acts and omissions of Defendants in permitting prostitution and sex trafficking of minor girls at the motel caused special damages to Plaintiffs, as they were minor victims of sex trafficking at Defendants' nuisance motel and suffered damages to their health, including mental and emotional harm, pain and suffering, and Defendants are liable to Plaintiffs for all such

damages.

96.

The nuisance conditions existing at the time Plaintiffs were trafficked continued after the transfer of the property from Mata Enterprises, Inc. to Meldimata, LLC, making all Defendants liable for the continuing nuisance.

### *Nuisance Per Se*

97.

The Days Inn motel constituted a nuisance per se under Georgia law because the because the motel knowingly and/or negligently turned a blind-eye and permitted illegal sexually related crimes to occur at the motel, including minor sex trafficking.

98.

A business where illegal practices are permitted constitutes a nuisance.

99.

A business, like the Days Inn, that allows prostitution and sex trafficking is a per se public nuisance under Georgia law. *Brindle v. Copeland*, 145 Ga. 398, 89 S.E. 332 (1916) ("A lewd house is per se a 'public nuisance.'").

100.

Plaintiff was directly harmed as a result of the sex crime nuisance at the Days Inn that permitted illegal sexual activity to occur there.

101.

Defendants are liable for nuisance (public nuisance and/or per se public nuisance) by reason of their failure to remedy the dangerous condition of prostitution and sex trafficking that persisted over a period of time as a continuous and repetitious condition and of which Defendants

had express notice and knowledge, and whereby Plaintiffs were direct victims of such activity.

## COUNT TWO
### (Punitive Damages)

102.

Plaintiffs incorporate the paragraphs above, as if fully set forth herein.

103.

Defendants' actions showed willful misconduct, malice, force, fraud, wantonness, oppression, or an entire want of care which would raise the presumption of conscious indifference to consequences.

104.

Alternatively, Defendants acted, and/or failed to act, with the specific intent to cause harm.

105.

Defendants are liable to Plaintiffs for punitive damages in an amount to be proven at trial.

## COUNT THREE
### (Successor Liability)

106.

Plaintiffs incorporate the paragraphs above, as if fully set forth herein.

107.

Defendant Meldimata, LLC is liable as a successor to Defendant Mata Enterprises, Inc. for the torts committed against Plaintiffs at the motel under one or more of the following theories:

a. Continuation of the Business Enterprise: Meldimata, LLC continued the same business operations at the same location with substantially the same ownership, management, and employees as Mata Enterprises, Inc., making Meldimata, LLC liable for the torts of its predecessor;

b.  Fraudulent Transfer to Escape Liability: The transfer of the property from Mata Enterprises, Inc. to Meldimata, LLC occurred shortly after Reid's arrest and indictment for sex trafficking at the property and was effectuated with the intent to avoid liability for the sex trafficking and other torts committed at the property;

c.  De Facto Merger: The transfer constituted a de facto merger between related entities controlled by the same individuals, making the successor entity liable for the predecessor's torts;

d.  Mere Continuation: Meldimata, LLC is a mere continuation of Mata Enterprises, Inc., operated by the same individuals for the same purposes at the same location; and

e.  Inadequate Consideration: The transfer was effectuated for inadequate consideration ($485,000 compared to the property's value and prior sale price of $1,900,000), suggesting a fraudulent transfer to avoid creditors and tort claimants.

108.

Under Georgia law, successor corporations may be held liable for the torts of their predecessors when one or more of the above circumstances exist.

109.

The timing of the transfer (eight months after Reid's arrest and two months after his federal indictment), the overlapping ownership and management, the continuation of the same business operations, and the below-market consideration all demonstrate that Meldimata, LLC should be held liable as a successor for the torts committed while Mata Enterprises, Inc. owned the property.

## COUNT FOUR
### (Piercing the Corporate Veil)

110.

Plaintiffs incorporate the paragraphs above, as if fully set forth herein.

111.

The corporate form of Defendants Mata Enterprises, Inc. and Meldimata, LLC should be disregarded, and individual Defendants B.B. Patel, Ankit Patel, and Kanta B. Patel should be held personally liable because:

a. The individual Defendants exercised complete domination and control over the corporate entities;

b. The corporate form was used to perpetrate fraud by transferring the property between related entities to avoid liability for sex trafficking of minors;

c. Upon information or belief, The individual Defendants had actual or constructive knowledge of the sex trafficking occurring at the property and failed to take action to prevent it;

d. The individual Defendants profited personally from the rental of rooms used for sex trafficking of minor girls;

e. The corporate entities failed to observe corporate formalities by engaging in the below-market related-party transfer and administratively dissolving Mata Enterprises, Inc. shortly after transferring its primary asset;

f. The corporate entities were inadequately capitalized relative to the nature of the business and the foreseeable risks;

g. The corporate form was used as a mere shell or instrumentality to perpetuate the nuisance conditions at the property; and

h.  It would be unjust and inequitable to allow the individual Defendants to hide behind the corporate form given their personal knowledge, involvement, and profit from the sex trafficking of Plaintiffs.

112.

Adherence to the corporate form would sanction fraud and promote injustice by allowing the individual Defendants to profit from sex trafficking of minors while avoiding personal responsibility for their actions and omissions.

**COUNT FIVE**
**(Attorneys' Fees and Expenses of Litigation Pursuant to O.C.G.A. § 13-6-11**
**For Bad Faith Conduct)**

113.

Plaintiffs incorporate the paragraphs above, as if fully set forth herein.

114.

Based on all the facts set forth above, Defendants acted in bad faith, have been stubbornly litigious, or have caused Plaintiffs unnecessary trouble and expense.

115.

Defendants' bad faith is demonstrated by the fact that despite Arthur Gerald Reid's well-documented and extensively prosecuted sex trafficking operation at their motel, including his federal indictment, guilty plea, and 30-year prison sentence for sex trafficking of children—including Plaintiffs K.J. and N.J.—at the motel, Defendants have failed to take any meaningful action to prevent sex trafficking and prostitution at their motel.

116.

Defendants' bad faith is further demonstrated by their willful blindness to the obvious signs of sex trafficking occurring at their motel, including Reid's repeated rental of rooms, the presence

of multiple young women and girls in his rooms, the high traffic of men to his rooms, and Reid's advertisements of his victims on Backpage.com using phone numbers connected to the Days Inn.

117.

Defendants knew or should have known that Reid was trafficking Plaintiffs and other minor victims at their motel, yet Defendants took no action to stop it, report it, or prevent it because they were profiting from the rental of rooms used for sex trafficking of minors.

118.

Defendants' pattern of bad faith conduct both before and after Plaintiffs' sex trafficking as minors demonstrates a complete indifference toward sex crimes and the safety of women and girls at their motel.

119.

Defendants' transfer of the property from Mata Enterprises, Inc. to Meldimata, LLC shortly after Reid's arrest and indictment, using the same family members and management structure while continuing the same dangerous operations, constitutes bad faith conduct designed to evade liability for the sex trafficking that occurred at the property.

120.

Defendants are liable to Plaintiffs for attorney's fees and expenses of litigation in an amount to be proven at trial based on their long running pattern of bad faith conduct, their specific bad faith conduct toward Plaintiffs as minors, and their continued operation of the motel as a location for sex trafficking even after Reid's prosecution and conviction.

121.

Defendants are liable for attorney's fees and expenses of litigation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against the Defendants as set forth above and request:

(a) Plaintiffs be awarded damages in amounts to be shown at trial from the Defendants;

(b) Plaintiffs be awarded all general, special, compensatory, economic, consequential, and other allowable damages in accordance with the enlightened conscience of an impartial jury from Defendants;

(c) Plaintiffs be awarded a trial by jury;

(d) That the Court find Defendant Meldimata, LLC liable as a successor to Defendant Mata Enterprises, Inc. for the torts committed against Plaintiffs;

(e) That the Court pierce the corporate veil and hold individual Defendants B.B. Patel, Ankit Patel, and Kanta B. Patel personally liable for the harms caused to Plaintiffs;

(f) Plaintiffs be awarded punitive damages in an amount sufficient to punish Defendants and deter similar conduct;

(g)  Plaintiffs be awarded attorney's fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11; and

(h) Plaintiffs have such other relief as this Court deems just and appropriate under the circumstances.

Respectfully submitted, this 4th day of December, 2025.

GAUTREAUX LAW, LLC

*/s/Karl David Cooke, Jr.*
Karl David Cooke, Jr.
Georgia Bar No. 184584
Jarome E. Gautreaux
Georgia Bar No. 297336
Griffin D. Green
Georgia Bar No. 071978

778 Mulberry Street
Macon, Georgia 31201
(478) 238-9758 (telephone)
(478) 216-9179 (facsimile)
E: david@gautreauxlawfirm.com
jarome@gautreauxlawfirm.com
griffin@gautreauxlawfirm.com

**ANDERSEN, TATE & CARR, P.C.**

*/s/Patrick J. McDonough*
PATRICK J. MCDONOUGH
Georgia Bar No. 489855
 pmcdonough@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
JENNIFER M. WEBSTER
Georgia Bar No. 760381
jwebster@atclawfirm.com

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 I Telephone
(770) 236-9784 I Facsimile
Attorneys for Plaintiff